43 P.3d 232

**STANDARD MANAGEMENT, INC., and
Paz F. Abastillas, Plaintiffs–
Appellants,**

v.

**Benjamin Paul KEKONA; Tamae M. Kek-
ona; Kevin K.K. Kekona; Paulette Ka-
wakami; North Shore Shuttle, Inc.;
William J. Eggers III; Fred Paul Benco;
Kevin S.C. Chang, Defendants–Appel-
lees.**

No. 22611.

Intermediate Court of Appeals of Hawai'i.

April 17, 2001.

Reconsideration Denied
April 30, 2001.

Certiorari Denied June 12, 2001.

Robert A. Smith, on the briefs, for plaintiffs-appellants.

Fred Paul Benco, on the briefs, for defendants-appellees.

William J. Eggers III, pro se.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by LIM, J.

Plaintiffs–Appellants Standard Management, Inc. (SMI) and Paz F. Abastillas (Abastillas) appeal the June 4, 1999 final judgment of the circuit court of the first circuit in Civil No. 99–0345–01. We will refer to this lawsuit as "SMI# 2." The final judgment was predicated upon the circuit court's order of even date that granted motions brought by the defendants to dismiss the January 27, 1999 complaint and the March 29, 1999 first amended complaint, declare plaintiffs and their counsel, Robert A. Smith (Smith), "vexatious litigants," and afford defendants related relief.

The order granted the motions as follows:

1. Plaintiffs and their counsel are determined to be vexatious litigants within the meaning of HRS [Hawai'i Revised Statutes] Chapter 634J.

2. Plaintiffs and their attorney, Robert A. Smith, are hereby barred and enjoined from filing any new litigation (including complaints, lawsuits, claims, cross-claims, counterclaims and third-party claims) in the courts of the State of Hawaii against the Kekona defendants and defendant Eggers and their privies, without first obtaining prior leave of the Administrative Judge of the First Circuit Court as provided by Section 634J–7, H.R.S. The Clerk of the First Circuit Court shall provide a copy of this Order to the Clerk of the Hawaii Supreme Court.

3. All claims made by plaintiffs in the complaint and first amended Complaint are frivolous and are not reasonably supported by the facts and the law, in that they are barred by the doctrines of *res judicata* and collateral estoppel, they are not based on any new evidence, and plaintiffs can prove no set of facts entitling them to relief.

3. [sic] Attorney's fees and costs are therefore awarded under HRS § 607–14.5 against plaintiffs and their attorney, Robert A. Smith, jointly and severally, in the amount of $9,441.50 as to the Kekona defendants and in the amount of $4,897.36 as the [sic] defendant Eggers.

4. [sic] The complaint and first amended complaint filed are dismissed with prejudice.

(Italics in the original.)

## I. ISSUES PRESENTED.

SMI and Abastillas appeal the dismissal of the "independent action in equity" (IAE) contained in the second count of their complaint and duplicated in the first count of their first amended complaint. They also appeal the circuit court's conclusion that they and their attorney are "vexatious litigants," as well as the circuit court's determination that their claims were frivolous.

We affirm the dismissal of the IAE. We also affirm the circuit court's determination that plaintiffs' claims were frivolous. We affirm the designation of Abastillas as a "vexatious litigant." However, we vacate the designation of SMI and Smith as such. We therefore remand to the circuit court to rectify the relief afforded defendants for the abusive litigation perpetrated by plaintiffs and their attorney.

## II. DISCUSSION.

### 1. The Independent Action in Equity.

The IAE asked the circuit court to set aside its September 2, 1994 judgment, predicated upon a jury verdict, in *Standard Management, Inc. v. Kekona*, Civil No. 89–3517–11, as well as the judgment of this court arising out of our memorandum opinion on appeal in that case, *Standard Management, Inc. v. Kekona*, 87 Hawai'i 263, 953 P.2d 1361 (App.1997) (mem.), *cert. denied*, January 23, 1998, because "the judgments ... ought not, in equity and good conscience, to be enforced." That case we will refer to as "SMI# 1." The *dramatis personae* in SMI# 1 have become plaintiffs, defendants and/or counsel in SMI# 2. We detailed the factual background underlying SMI# 1 at some length in our opinion in another appeal out of SMI# 1, *Standard Management, Inc. v. Kekona*, 99 Hawai'i 125, 53 P.3d 264 (App. 2001).

The IAE is a voluminous pleading, brought pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b).[1] In it, SMI and Abastillas attack the SMI# 1 judgments on grounds falling into three general rubrics. First, they complain of numerous judicial errors at all stages of the trial court litigation in SMI# 1, and of numerous judicial errors this court made on appeal in that case. Second, they allege manifold and multifarious instances of "perjury"—over one hundred by our count—on the part or on behalf of the SMI# 1 defendants, both here and below. Third, they charge fraud upon the court in that the SMI# 1 defendants and their attorneys conspired and "schemed together to (1) develop concocted claims and defenses and (2) support those claims with perjurious, fabricated evidence and testimony, in a plot to fool the trial judge and the jury [and the appeals court]."

In granting the defendants' motions to dismiss with respect to the IAE, the circuit court orally ruled as follows:

I have considered the submissions of the parties and your arguments for this morning. And the Court will treat the motion, one, as a motion to dismiss. And the Court finds and concludes that it appears, beyond doubt, that the plaintiff can prove no set of facts in support of any of their claims in the complaint in that these issues have previously been litigated.

The challenge, by way of a new lawsuit, is improper and inappropriate, and in addition to that, it is untimely. And there is no support for challenging or attacking the judgment previously entered in this manner.

Right or wrong, the circuit court treated the defendants' motions as motions to dismiss. As such, and as SMI and Abastillas urge us to on appeal, we "deem the allegations contained in the complaint as true." *Au v. Au*, 63 Haw. 210, 214, 626 P.2d 173, 177 (1981) (citations omitted). Thereupon, we determine whether it is "beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief." *Dunlea v. Dappen*, 83 Hawai'i

---

1. Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b) (1999) provides:

**Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should

have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. *This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.*
(Emphasis added.)

28, 32, 924 P.2d 196, 200 (1996) (citations omitted).

Even under this most favorable of standards of review, there is no doubt that SMI and Abastillas can prove no set of facts in support of their IAE that would entitle them to relief.

■ With respect to the first ground for the IAE, even if we assume *arguendo* that judicial errors abounded in the trial court proceedings and on appeal in SMI# 1, the fact remains that the IAE in this respect is nothing more than a second appeal of the trial court judgment in SMI# 1. What is more, it is an appeal to the circuit court to vacate this court's memorandum opinion in SMI# 1, with respect to which a writ of certiorari to the Hawai'i Supreme Court was denied. This, quite simply, will not do.

■ "The purpose of the independent action is not to relitigate issues that were finally determined in a previous action between the same parties[.]" *Hayashi v. Hayashi*, 4 Haw.App. 286, 292, 666 P.2d 171, 175 (1983). Furthermore, as stated by the Hawai'i Supreme Court, "a trial court has no jurisdiction under [HRCP Rule 60(b)] to find that our state supreme court erred in determining issues presented to it." *Robinson v. Ariyoshi*, 65 Haw. 641, 665, 658 P.2d 287, 304 (1982).

■ By the same token, the second ground for the IAE is no support. Even assuming, *arguendo*, that prevarication by or on behalf of the defendants was rife below and on appeal in SMI# 1, SMI and Abastillas can find no comfort in an HRCP Rule 60(b) IAE. SMI and Abastillas admitted at the hearing on the motions to dismiss that their IAE did not address any instances of alleged perjury that they did not know about at trial in SMI# 1. Rather, their justification for the IAE was, unadorned, "we have not had judicial attention to what we said went wrong in that trial, and this is where we seek to get that attention."

They seek in vain, for again, "[t]he purpose of the independent action is not to relitigate issues that were finally determined in a previous action between the same parties[.]" *Hayashi*, 4 Haw.App. at 292, 666 P.2d at 175; *United States v. Throckmorton*, 98 U.S. 61, 66, 25 L.Ed. 93 (1878) ("the doctrine is ... well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed").

Moreover, "[i]n order to succeed, the movant [in a HRCP Rule 60(b) IAE] must show a recognized ground for equitable relief, such as fraud, accident, or mistake, *and the absence of any other adequate remedy.*" *Hayashi*, 4 Haw.App. at 292, 666 P.2d at 175 (citation omitted, emphasis supplied). SMI and Abastillas had their "adequate remedy" for the alleged instances of perjury in the crucible of discovery, jury trial and cross-examination therein, post-trial motions, and appeal and adversary argument thereon, in SMI# 1.

■ Furthermore, where fraud is alleged as grounds for an IAE, the plaintiff must show that the perjury relied upon as the basis for fraud is more than garden-variety fraud. *Geo. P. Reintjes Co., Inc. v. Riley Stoker Corp.*, 71 F.3d 44, 48 (1st Cir.1995) ("there is also little doubt that fraud cognizable to maintain an untimely independent attack [under Federal Rules of Civil Procedure Rule 60(b)] [2] upon a valid and final judgment has long been regarded as requiring more than common law fraud") (citations omitted). The actuating fraud must be such that "it prevented [the movant] from presenting his case[.]" *Id.* (citation omitted). Nothing in the record indicates that SMI and Abastillas were so inhibited in SMI# 1.

The third ground for the IAE is styled fraud upon the court. And for good reason, because that allegation resonates with HRCP

**2.** "Rule 60(b), HFCR [Hawai'i Family Court Rules], is similar to Rule 60(b), Hawaii Rules of Civil Procedure (HRCP) and Rule 60(b), Federal Rules of Civil Procedure (FRCP), except for some minor variations which do not affect the provisions concerned here. Therefore, the treatises and cases interpreting HRCP, Rule 60(b) and FRCP, Rule 60(b) provide persuasive reasoning for the interpretation of HFCR, Rule 60(b)." *Hayashi v. Hayashi*, 4 Haw.App. 286, 290 n. 6, 666 P.2d 171, 174 n. 6 (1983).

Rule 60(b): "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, *or to set aside a judgment for fraud upon the court.*" (Emphasis supplied.) But stripped of fashion, the third ground is nothing more than the second ground of perjury dressed up by allegations of participation in the perjury by the defendants' attorneys.

■ Although fraud upon the court has eluded exact definition,[3] SMI and Abastillas are evidently aware that fraud upon the court "is more than mere fraud." *S.E. Colo. Water Cons. v. Cache Creek Mining Trust,* 854 P.2d 167, 176 (Colo.1993). Hence their facile attempt to clothe what are essentially allegations of ordinary fraud with the trappings of fraud upon the court. SMI and Abastillas apparently take their cue from a seminal case in the equitable nullification of judgments, *Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944). In the opening brief, they state:

> In *Hazel–Atlas,* an attorney had participated in the fabrication of trial evidence. Under this case, fraud on the Court occurs when there is an attempt to "subvert the integrity of the court itself ... that is perpetrated by *officers of the court* so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases...." 11 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane § 2870 at p. 414 [emphasis supplied].

Opening Brief at 24 (emphasis, typesetting, ellipses and brackets in the original). Thereupon, SMI and Abastillas claim that "[we] have alleged 9 instances of fabricated evidence participated in by not only by [sic] the [defendants] but also by their attorneys[.]"

■ Granted, allegations of attorney participation is perjury have been held sufficient to propel garden-variety fraud into the category of fraud upon the court cognizable in a Rule 60(b) IAE. *Reintjes,* 71 F.3d at 49 (it is well-settled that "perjury alone, absent allegation of involvement by an officer of the court ... has never been sufficient" for a claim of fraud upon the court in an independent action under Rule 60(b) (citations omitted)). However,

> [t]he possibility of perjury, *even concerted,* is a common hazard of the adversary process with which litigants are equipped to deal through discovery and cross-examination, and, where warranted, motion for relief from judgment to the presiding court.

*Id.* (citation omitted, emphasis supplied). Accordingly, even if the alleged perjury in SMI# 1 involved the defendants' attorneys, if SMI and Abastillas had ample opportunity there to reveal it as such, and they had, only garden-variety fraud may be alleged, and unsuccessfully so in an IAE. *Hayashi,* 4 Haw.App. at 292, 666 P.2d at 175; *Throckmorton,* 98 U.S. at 66; *Reintjes,* 71 F.3d at 48.

■ In other words, it is not enough simply to allege attorney or other involvement of an officer of the court in the alleged fraud, as if "fraud upon the court" were a magical incantation affording automatic entree to a cognizable IAE. Allegations of fraud upon the court or no, to survive, an IAE must still meet stringent, universal standards:

> An independent action in equity to set aside a judgment has strict limitations.
>
> > The indispensable elements of such a cause of action are (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.

*National Surety Co. v. State Bank of Humboldt,* 120 F. 593, 599 (8th Cir.1903).

---

**3.** *See* 47 Am.Jur.2d Judgments § 886 at 362–63, which states that "[v]arious attempts have been made to define fraud upon the court." The treatise goes on to state that "these attempts at definition of 'fraud upon the court' have been criticized as not being very helpful to a court trying to determine whether a particular set of facts goes beyond ordinary fraud."

*S.E. Colo. Water Cons.*, 854 P.2d at 175. As previously discussed, SMI and Abastillas cannot meet these standards. *See id.* at 176; *Reintjes*, 71 F.3d at 48–49.

Thus revealed, the IAE is a transparent attempt by SMI and Abastillas to bring their bedraggled claims to the adjudicator yet a third time, or fourth, if one counts their writ of certiorari. In their situation, however, there is no second bite at the appeal. That is reserved for situations more grave and deserving of the extraordinary remedy afforded by a HRCP Rule 60(b) IAE, whereby a final judgment carefully and completely considered, and signed, sealed and unsuccessfully appealed, may nevertheless be set aside. The United States Supreme Court has recognized the exceptional nature of the remedy:

> Independent actions must, if [Federal Rules of Civil Procedure] Rule 60(b) is to be interpreted as a coherent whole, be reserved for those cases of "injustices which, in certain instances, are deemed sufficiently gross to demand a departure" from rigid adherence to the doctrine of *res judicata.*
>
> . . . .
>
> The sense of these expressions is that, under the Rule, an independent action should be available only to prevent a grave miscarriage of justice.

*United States v. Beggerly,* 524 U.S. 38, 46–47, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998) (citations omitted, italics in the original). We have followed suit: "Resort to the independent equitable action may be had only rarely and then only under unusual and exceptional circumstances. 11 [Charles Alan] Wright & [Arthur R.] Miller [& Mary Kay Kane], Federal Practice and Procedure: *Civil* § 2868 (1973)." *Hayashi,* 4 Haw.App. at 292, 666 P.2d at 175. And for good reason, because "[t]here are no maxims of the law more firmly established, or of more value in the administration of justice, than [those] which are designed to prevent repeated litigation between the same parties in regard to the same subject of controversy[.]" *Throckmorton,* 98 U.S. at 65.

 We conclude the circuit court did not err in dismissing the IAE.[4] We here discern no grave or gross miscarriage of justice, no unusual and exceptional circumstances. We see only that which SMI and Abastillas implicitly admit—a naked refusal to accept an adverse final judgment that was fully considered and reviewed.

**2. Sanctions Under Hawai'i Revised Statutes § 607–14.5.**

 Seen in the light of the foregoing discussion, SMI# 2 was clearly "frivolous and ... not reasonably supported by the facts and the law" under Hawai'i Revised Statutes (HRS) § 607–14.5 (1993).[5] SMI and Abastil-

4. We believe the circuit court was also correct in deeming the IAE untimely. Aside from complaints about errors of law, the material allegations of the IAE involved garden-variety fraud, which sound in "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party" under HRCP Rule 60(b)(3). If, however, SMI and Abastillas had proceeded under that subsection, their Rule 60(b) action in this case (SMI# 2), filed in 1999 to set aside the circuit court's 1994 judgment in SMI# 1, would have been grossly dilatory: "The motion shall be made within a reasonable time, and for reasons [under subsections] (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken." HRCP Rule 60(b). While the alternative Rule 60(b) IAE is *not constrained by any express time limitation,* we do not feel that it is legitimately utilized solely to skirt the time limitations for the other, enumerated subsections, lest it set them at naught. *See, e.g., U.S. v. Beggerly,* 524 U.S. 38, 46, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998) ("If relief may be obtained through an independent action in a case such as this, where the most that may be charged against the Government is a failure to furnish relevant information that would at best form the basis for a Rule 60(b)(3) motion, the strict 1–year time limit on such motions would be set at naught."); *Geo. P. Reintjes Co., Inc. v. Riley Stoker Corp.,* 71 F.3d 44, 49 (1st Cir.1995) ("Were mere perjury sufficient to override the considerable value of finality after the statutory time period for motions on account of fraud has *expired, it would upend the Rule's careful bal*ance.... Reintjes' claims amount, at best, to ordinary fraud which, as we have said, cannot form the basis of an independent action under the Rule's saving provision when they would certainly be barred if presented as a motion under section (3)." (Citations and footnote omitted.)).

5. Hawai'i Revised Statutes (HRS) § 607–14.5 (1993) provided:

**Attorneys' fees in civil actions.** (a) In any civil action in this State where a party seeks money

las contend on appeal that the same determination below was erroneous because "a complaint stating a claim for relief cannot be frivolous." Reply Brief (replying to Defendants' (other than Eggers) Answering Brief) at 2 (citations to the Opening Brief omitted). This is their sole argument on appeal on this issue. Inasmuch as their opposition is wholly tautologous, we affirm the circuit court's award of sanctions under HRS § 607–14.5.

### 3. *"Vexatious Litigants" Under Hawai'i Revised Statutes Chapter 634J.*

SMI and Abastillas contend that "[t]he circuit court erred when it found and concluded that '[p]laintiffs and their counsel are determined to be vexatious litigants within the meaning of HRS chapter 634J.'" We agree and vacate insofar as the circuit court determined that SMI and Smith are vexatious litigants. However, we disagree and affirm that designation as to Abastillas. We remand to rectify the relief afforded defendants for this frivolous and abusive litigation.

 This issue requires us to interpret HRS chapter 634J in the context of this case.

"The interpretation of a statute is a question of law reviewable *de novo.*["] *Franks v. City & County of Honolulu,* 74 Haw. 328, 334, 843 P.2d 668, 671 (1993).

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. HRS § 1–15(1)(1993). Moreover, the courts may resort to extrinsic aids in determining the legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray v. Administrative Dir. of the Court,* 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997) (internal citations, quotation marks, brackets, ellipses, and footnote omitted).

This court may also consider "the reason and spirit of the law, and the cause which induced the legislature to enact it[ ] . . . to discover its true meaning." *Id.* at 148 n. 15, 931 P.2d at 590 n. 15; HRS § 1–15(2) (1993).

Also, this court is bound to construe statutes so as to avoid absurd results. *Keliipuleole v. Wilson,* 85 Hawai'i 217, 222, 941 P.2d 300, 305 (1997). "A rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable[,] impracticable . . . inconsisten[t], contradict[ory], and illogical[ ]." *Id.* at 221–22, 941 P.2d at 304–05 (original brackets and citation omitted) (brackets added).

*Amantiad v. Odum,* 90 Hawai'i 152, 160–61, 977 P.2d 160, 168–69 (1999).

HRS chapter 634J provides a defendant in a pending State civil proceeding protection against a plaintiff deemed by the court to be a vexatious litigant. HRS § 634J–2 (1993) provides for present relief:

**Motion for order requiring plaintiff to post security.** In any litigation pending in any court of this State, at any time until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security. The motion must be based

---

damages or injunctive relief, or both, against another party, and the case is subsequently decided, the court may, as it deems just, assess against either party, and enter as part of its order, for which execution may issue, a reasonable sum for attorneys' fees, in an amount to be determined by the court upon a specific finding that the party's claim or defense was frivolous.

(b) In determining the award of attorneys' fees and the amounts to be awarded, the court must find in writing that all claims or defenses made by the party are frivolous and are not reasonably supported by the facts and the law in the civil action.

upon the ground, and supported by a showing, that the plaintiff is a vexatious litigant and that there is no reasonable probability that the plaintiff will prevail in the litigation against the moving defendant.

The chapter also provides for prospective relief, which is the kind of relief granted by the circuit court in this case. HRS §§ 634J–7(a) and (b) provide:

> **Vexatious litigant; prefiling order prohibiting filing of new litigation.** (a) In addition to any other relief provided in this chapter, the court, on its own motion or the motion of any party, may enter a prefiling order which prohibits a vexatious litigant from filing any new litigation in the courts of this State on the litigant's own behalf without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed. Disobedience of this order by a vexatious litigant may be punished as a contempt of court.
>
> (b) The presiding judge shall permit the filing of litigation only if it appears, after hearing, that the litigation has merit and has not been filed for the purposes of harassment or delay. The presiding judge may condition the filing of the litigation upon the furnishing of security for the benefit of the defendants as provided in section 634J–4.

The chapter defines "vexatious litigant" as follows:

> "Vexatious litigant" means a plaintiff who does any of the following:
>
> (1) In the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five civil actions other than in a small claims court that have been:
>
> (A) Finally determined adversely to the plaintiff; or
>
> (B) Unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing;
>
> (2) After litigation has been finally resolved against the plaintiff, relitigates or attempts to relitigate in propria persona and in bad faith, either:
>
> (A) The validity of the determination against the same defendant or defendants as to whom the litigation was finally determined; or
>
> (B) The cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined;
>
> (3) In any litigation while acting in propria persona, files, in bad faith, unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay; or
>
> (4) Has previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence.

SMI, as a matter of law, cannot be a vexatious litigant.

First, a vexatious litigant under the statute must be a natural person. HRS § 634J–1 provides that " '[v]exatious litigant' means a plaintiff[.]" HRS § 634J–1 defines "plaintiff," in turn, as "the person who commences, institutes or maintains litigation or causes it to be commenced, instituted, or maintained, including an attorney at law acting on the attorney's own behalf." The statute does not thereafter define the term "person," but the plain language would indicate that the statute applies only to natural persons. We are encouraged in this conclusion by the statute's definition of "defendant" as "a person (including a corporation, association, partnership, firm, or governmental entity) against whom litigation is brought or maintained, or sought to be brought or maintained." HRS § 634J–1. From this, we surmise that the legislature was aware the term "person" could encompass the various bodies corporate, but declined to so far extend the

term with respect to its definition of "plaintiff."

In addition, the legislative history underlying HRS chapter 634J strongly suggests that corporations are excluded from the purview of the chapter:

[Y]our Committee [on Judiciary] is also concerned that the definition of a vexatious litigant may bar certain groups such as environmentalists or Native Hawaiians from filing legitimate claims. *It should be clarified that a vexatious litigant is a person and a plaintiff.* Your Committee, therefore, has amended the measure by replacing "on the plaintiff's own behalf" with "in propria persona" which has been defined to mean *"on the person's own behalf acting as plaintiff."*

Hse. Stand. Comm. Rep. No. 1178, in 1993 House Journal, at 1473 (emphases supplied).

Given SMI's corporate status, the circuit court erred in determining that it was a vexatious litigant under HRS chapter 634J. We therefore vacate the circuit court's designation and its prefiling order against SMI.

Our discussion relating to SMI also indicates that Smith, as a matter of law in the context of this case, could not be a vexatious litigant.

■ Under HRS § 634J–1, only a plaintiff may be deemed a vexatious litigant: "Vexatious litigant means a plaintiff[.]" Also, the legislative history just quoted expressly clarified that "a vexatious litigant is a

person *and a plaintiff.*" Hse. Stand. Comm. Rep. No. 1178, in 1993 House Journal, at 1473 (emphasis supplied). Both houses of the legislature so intended: "Your Committee [on Judiciary] has amended the bill to clarify that *the definition of vexatious litigant is limited to the plaintiff.*" Sen. Stand. Comm. Rep. No. 467, in 1993 Senate Journal, at 978 (emphasis supplied).

■ Further, the protections of HRS § 634J–2 apply only against a "plaintiff." And a HRS § 634J–7 prefiling order, which can only "prohibit[ ] a vexatious litigant from filing any new litigation in the courts of this State *on the litigant's own behalf* without first obtaining leave" (emphasis supplied), suggests that the chapter desires and does not intend to inhibit the presumptively salutary intermediation of counsel.

Smith was acting here as attorney of record for SMI and Abastillas. He was not a plaintiff and therefore could not be deemed a vexatious litigant under HRS chapter 634J.

In defending the circuit court's designation, defendants suggest that Smith was the *de facto* plaintiff in this case, a sort of Svengali to the *de jure* but merely *pro forma* plaintiffs. Defendants' (other than Eggers) Answering Brief at 27–29 (citing *Wolfgram v. Wells Fargo Bank,* 53 Cal.App.4th 43, 61 Cal.Rptr.2d 694 (Cal.Ct.App.1997); *In re Shieh,* 17 Cal.App.4th 1154, 21 Cal.Rptr.2d 886 (Cal.Ct.App.1993)); [6] Defendant Eggers' Answering Brief at 18–20 (citing, however, no authority for the proposition).

**6.** The citations relied upon by the defendants do not, however, support their argument.

*In re Shieh,* 17 Cal.App.4th 1154, 21 Cal. Rptr.2d 886 (Cal.Ct.App.1993), involved an attorney plaintiff—previously deemed a vexatious litigant numerous times under the cognate California statute—who filed yet another duplicative lawsuit. Though he was represented by counsel in the latter suit and could not by the terms of the prospective relief statute be prohibited from filing further lawsuits without leave if he was represented by counsel, the court nevertheless found that his attorneys thus far had been "mere puppets" and barred him from so filing, whether *pro se* or represented. *Id.* at 1167–68, 21 Cal. Rptr.2d 886. In doing so, however, the court acknowledged that "[t]his case ... breaks the

mold." *Id.* at 1167, 21 Cal.Rptr.2d 886. The pertinent point here is that Shieh's attorneys were not held to be vexatious litigants along with him, as defendants here urge with respect to Smith as attorney for SMI and Abastillas.

*Wolfgram v. Wells Fargo Bank,* 53 Cal.App.4th 43, 61 Cal.Rptr.2d 694 (Cal.Ct.App.1997), merely cites *Shieh. Id.* at 58, 61 Cal.Rptr.2d 694. Wolfgram was himself an attorney plaintiff, "who styles himself 'philosopher and blacklisted attorney[.]' " *Id.* at 47, 61 Cal.Rptr.2d 694. However, the prefiling order imposed upon Wolfgram prohibited him from filing new lawsuits without leave only if *pro se,* in accordance with the prospective relief statute. *Id.* at 47–48, 61 Cal. Rptr.2d 694.

The circuit court's ruling indicates that it accepted the defendants' suggestion: "[T]he Court finds and concludes that the plaintiffs and their attorneys [sic] are vexatious litigants, that they have been, in effect, pro se litigants all of this time, although they appear to have been represented by counsel[.]" Indeed, this court has acknowledged some suspicions in this direction. *Standard Management, Inc. v. Kekona,* , 87 Hawai'i 263, 953 P.2d 1361 (App.1997) (mem.).[7]

However, given the categorical language of the statute and the emphatic statements of intent in the legislative history, we do not feel we can put so creative an interpretation upon the statutory definition of "plaintiff": "[T]he person who commences, institutes or maintains litigation or causes it to be commenced, instituted, or maintained, *including an attorney at law acting on the attorney's own behalf*." HRS § 634J–1 (emphasis supplied). If the legislature could envision that defendants might need protection from an attorney openly litigating *pro se,* HRS § 634J–1 (" '[i]n propria persona' means *on the person's own behalf acting as plaintiff*" (emphasis supplied)),[8] it could also envision that an attorney might litigate from behind the plaintiff's veil, so to speak, and provide clear and express protections akin to piercing the corporate veil. It did not so provide. If it did not so envision, it is not ours but the legislature's prerogative to address abusive litigation scenarios perhaps unforeseen at the time of the chapter's enactment.

Hence, we conclude that the circuit court also erred in determining that Smith was a vexatious litigant. We therefore vacate the

circuit court's designation and its prefiling order against Smith.

Abastillas, on the other hand, is a vexatious litigant, and the circuit court did not err in so designating her.

Because Abastillas was represented by counsel here and in her previous cases, the definitions of "vexatious litigant" contained in HRS §§ 634J–1(1)–(3) are not applicable to her, as those provisions require that the plaintiff was previously or is proceeding *pro se.* Thus, in order for the chapter to operate against Abastillas, she must come within the definition of a vexatious litigant under HRS § 634J–1(4).

That provision defines "vexatious litigant" as a plaintiff who

[h]as previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence.

 Despite her strenuous arguments to the contrary, Abastillas has indeed been declared a vexatious litigant by a state or federal court of record. In *Abastillas v. Kekona,* 87 Hawai'i 446, 958 P.2d 1136 (1998), no less than the Hawai'i Supreme Court opined that Abastillas had "engaged in a pattern of frivolous and vexatious litigation." *Id.* at 449, 958 P.2d at 1139. And *Abastillas* was one of the plethora of satellite actions, including this SMI# 2, that were spun out of SMI# 1. Hence, *Abastillas* and this case are "based upon the same or substantially similar facts, transaction, or occurrence." HRS § 634J–1(4).

---

7. With respect to SMI# 1, we noted that, "[a]lthough Jack C. Morse is listed as the attorney for SMI and [Abastillas], and Smith is listed as the attorney for Smith, all briefs are in the same distinctive typeface, and all briefs involve some degree of cross-reference. Thus, it is logical to conclude that the briefs were all prepared by one attorney, or by two attorneys working closely together." *Standard Management, Inc. v. Kekona,* No. 18388, slip op. at 19 n.11, 87 Hawai'i 263, 953 P.2d 1361, (Haw.App. Nov. 25, 1997) (mem.).

8. Lest we be tempted to freelance with the semantics of the last phrase of the statutory definition of "plaintiff"—"including an attorney at law

acting on the attorney's own behalf[,]" HRS § 634J–1—in order to conclude that it means an attorney acting as such *de jure* but as plaintiff *de facto,* we must remember that the legislature clearly intended the phrase to mean an attorney plaintiff *pro se:* "Your Committee [on Judiciary] has amended the bill to clarify that the definition of vexatious litigant is limited to the plaintiff. Your Committee also notes that the bill is derived from a California statute which contains the latin phrase 'in propria persona' rather than 'on the person's own behalf'. *This change of wording is not intended to modify the meaning of the statute.*" Sen. Stand. Comm. Rep. 467, in 1993 Senate Journal, at 978 (emphasis supplied).

The circuit court therefore correctly determined that Abastillas was a vexatious litigant.

■ However, in granting the relief afforded by HRS § 634J–7(a), the circuit court appeared to bar Abastillas from filing, without leave, *any* new State litigation against the defendants. But a HRS § 634J–7(a) prefiling order prohibits a vexatious litigant from "filing any new litigation in the courts of this State *on the litigant's own behalf* without first obtaining leave[.]" (Emphasis supplied.) We do not believe that the emphasized phrase is surplussage, especially in light of the chapter's definition of "*in propria persona*" as "*on the person's own behalf* acting as plaintiff." HRS § 634J–1 (emphasis supplied). *See also* Sen. Stand. Comm. Rep. No. 467, in 1993 Senate Journal, at 978 ("the bill is derived from a California statute which contains the latin phrase 'in propria persona' rather than 'on the person's own behalf'. *This change of wording is not intended to modify the meaning of the statute.*" (emphasis supplied)); *Wolfgram*, 53 Cal. App.4th at 58, 61 Cal.Rptr.2d 694 (that prefiling orders under California's vexatious litigant statute apply only to *pro se* litigants "reflects the reality that a lawyer is often the best judge of the merits of a proposed suit").[9]

We therefore affirm the circuit court's determination that Abastillas is a vexatious litigant. However, we vacate its prefiling order against Abastillas and remand for imposition of restrictions consonant with HRS § 634J–7.

We realize that the foregoing holdings severely limit the efficacy and relieve two of the three targets of the prefiling order restrictions imposed in the circuit court's judgment. But they should in no way be interpreted as a derogation of our conclusion that SMI# 2 was egregiously frivolous and abusive, and that the defendants therein suffered condign prejudice. Our holdings were informed, however, and must be understood, in light of the intended purpose of HRS chapter 634J. While the chapter was intended to ad-dress some of the abuses that occurred in this case, it was simply not intended to address them all. Its primary concern is the particular problems posed by the *pro se* plaintiff.

As the legislative history confirms, HRS chapter 634J was "derived from a California statute[.]" Sen. Stand. Comm. Rep. No. 467, in 1993 House Journal, at 978. The California cognate, Cal.Civ.Proc.Code § 391 *et seq.*, was adopted to address the particular problem "created by the persistent and obsessive litigant, appearing in pro per. [*in propria persona*], who has constantly pending a number of groundless actions, sometimes against judges and other court officers who were concerned in the adverse decisions of previous actions." *Wolfgram*, 53 Cal.App.4th at 48, 61 Cal.Rptr.2d 694 (citations and internal quotation marks omitted). The legislative history of HRS chapter 634J also speaks almost exclusively to the problem of the *pro se* litigant. *See* Hse. Stand. Comm. Rep. 1178, in 1993 House Journal, at 1473, *passim;* Sen. Stand. Comm. Rep. No. 467, in 1993 Senate Journal, at 978, *passim.*

Although we realize, and this case illustrates, that the chapter as written cannot be all things to all victims of abusive litigation in all cases of such, this does not mean that we should arrogate to ourselves the privilege of "interpreting" the statute as such, by, for example, treating attorney as party or corporation as living person, or by affirming prefiling orders not confined to *pro se* suits. That may be abstract justice in this particular case, but it is not the law.

Nor need we. As the California courts point out, other provisions of law can protect against abusive litigation perpetrated by those not subject to laws like HRS chapter 634J: "The restriction of section 391, subdivisions (b)(1)(2), to persons proceeding in propria persona is not arbitrary or unreason-

---

9. The example of *Shieh, supra,* does not convince us to expand the scope of prefiling orders under HRS § 634J–7 to include new lawsuits filed by a vexatious litigant represented by counsel. As the court in *Shieh* recognized, such a radical expansion of the meaning of the vexatious litigant statute "breaks the mold." *Shieh*, 17 Cal. App.4th at 1167, 21 Cal.Rptr.2d 886. The discussion *infra* explains why such a radical departure is neither authorized by HRS chapter 634J nor necessary to prevent litigation abuses such as those in this case.

able. Attorneys are governed by prescribed rules of ethics and professional conduct, and, as officers of the court, are subject to disbarment, suspension, and other disciplinary sanctions not applicable to litigants in propria persona." *Taliaferro v. Hoogs*, 236 Cal. App.2d 521, 527, 46 Cal.Rptr. 147 (1965). *See also Wolfgram*, 53 Cal.App.4th at 59, 61 Cal.Rptr.2d 694 (citing *Taliaferro* for "the soundness of the Legislature's distinction between in propria persona suits and suits filed by attorneys"). For example, HRCP Rule 11 allows the court to levy sanctions upon an attorney and/or the party represented, whether the party be a natural person or a body corporate, for abusive litigation practices.

In this connection, we observe that some of the defendants here, in their motion to dismiss, did ask for HRCP Rule 11 sanctions against Smith, SMI and Abastillas. They also asked the circuit court to refer Smith to the disciplinary counsel for disciplinary action. It appears that the circuit court did not address these requests during the hearing on the motions to dismiss or in its order granting the motions.

### III. CONCLUSION.

Accordingly, we vacate the circuit court's designation of SMI and Smith as vexatious litigants. We affirm that designation as to Abastillas. We vacate all appurtenant prefiling orders under HRS § 634J-7 and remand for proceedings consistent with this opinion. The circuit court's June 4, 1999 judgment is affirmed in all other respects.